UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
_____

**SHEILA SCHULZ,**

      **Plaintiff,**

      **vs.**                                            **Case No. 09-C-298**

**GREEN COUNTY, WISCONSIN,**

      **Defendant.**
_____

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**
_____

## INTRODUCTION

Every Wisconsin county is required to provide juvenile intake services under Ch. 48 and 938 of the Wisconsin Statutes. Counties can elect to provide such services either through its circuit court or its social/human services agency. This case arises from a decision by the Green County Board of Supervisors at the end of 2008 to restructure its juvenile intake function and to transfer those services from the circuit court (court-attached) to the Department of Human Services (agency-attached). Green County's reorganization decision was driven by a desire to save the County money and to ensure that the juvenile intake agency had sufficient personnel to allow the County to adequately provide the required juvenile intake services.

The reorganization affected Plaintiff Sheila Schulz, who had been the Director of Juvenile Intake for Green County. As a result of the County's decision to restructure the department, her position, as well as another part-time juvenile intake position in the circuit court, were eliminated. The reorganization resulted in duties being transferred to the Human Services Department and a new position being created in that department to provide juvenile intake services.

Plaintiff maintains that by virtue of her status as a juvenile intake worker, she had a property interest in her employment and that she had certain pre-termination due process rights under the Fourteenth Amendment to the U.S. Constitution. Her claim of a property interest is predicated on Wis. Stat. § 17.10, which provides that, generally speaking, intake workers providing services under chs. 48 and 938 can only be removed for "cause." Plaintiff alleges that the County's reorganization deprived her of her property without adequate due process of law.

Presently before the Court is whether the "reorganization exception" negated the need for any pre-deprivation due process. Defendant Green County maintains that the decision to reorganize the juvenile intake function and to transfer those functions to human services satisfies the "reorganization exception," which recognizes that a municipal employer is permitted to eliminate positions and terminate employees, even those who have a property interest in their employment without due process of law, as long as the action is related to a *bone fide* reorganization and serves a legitimate governmental purpose.

2

Plaintiff acknowledges the existence of the "reorganization exception," but has maintained that the County's reorganization was somehow not legitimate. As fully set forth in this brief and the related proposed findings of fact, the County's decision to transfer the juvenile intake services was financially motivated and resulted in significant savings to the County. It reduced the overall compensation paid to juvenile intake workers; it eliminated the need for a part-time employee devoted exclusively to juvenile intake; and it eliminated the need for an additional on-call person. The relocation of the juvenile intake function also ensured that the agency had sufficient personnel to provide the required services. Unlike the court-attached agency which had only one full-time employee, a vacant part-time position, and had to rely upon contracted services from another nearby county, the Green County Human Services Department had adequate staff trained in juvenile intake who were available to perform the juvenile intake functions when required.

In addition to its defense based on the "reorganization exception," Defendant also maintains that there was no constitutional deprivation in that Plaintiff was never "removed" from office, but rather continued providing juvenile intake services, albeit in a different department after the reorganization. As she was not technically removed from office, she did not suffer a constitutional deprivation that mandated any pre-deprivation due process.

3

**ARGUMENT**

**I.      STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A scintilla of evidence in support of the non-moving party's position is not sufficient to withstand summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, the mere existence of an alleged factual dispute between the parties is not sufficient to defeat a motion for summary judgment. *Spath v. Hayes Wheel's Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).

II. **PLAINTIFF CANNOT ESTABLISH A DUE PROCESS VIOLATION UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.**

    A. <u>Plaintiff was not entitled to any due process based on the "reorganization exception."</u>

The Fourteenth Amendment Due Process Clause provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." *U.S. Const. Amend. 14 § 1.* Plaintiff's contends that Green County deprived her of a property interest (her position as a court-attached juvenile intake worker) without adequate pre-deprivation due process of law in violation of the Fourteenth Amendment to the U.S. Constitution. (Complaint, ¶¶ 34, 37).

There is no dispute that the County had the right to transfer its juvenile intake services from the circuit court to the Human Services Department. Indeed, Wisconsin statutes permit counties to provide the required juvenile intake services either under the supervision of the circuit court or through a county department providing social and/or human services. Wis. Stats. §§ 48.06(2) and 938.06(2). The majority of other Wisconsin counties have its juvenile intake function attached to a human services agency, as opposed to court-attached. (PFOF ¶ 50).

For purposes of this motion, Defendant concedes that Schulz had a property interest in her employment with the County. Wisconsin law provides that intake workers providing services under Chs. 48 and 938 can only be removed for "cause." *Wis. Stat. § 17.10(6)(b)(1).* Defendant also recognizes that as a general rule, an employee who has a property interest in his or her employment

5

can only be terminated after being afforded certain pre-deprivation due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494 (1985).

Wisconsin courts, however, have recognized that a legitimate governmental reorganization serves as a defense to a due process claim. Under the "reorganization exception," a municipal employer may terminate an employee with a property interest in his/her employment without due process if the termination is the result of a legitimate governmental reorganization. *Misek v. City of Chicago,* 783 F.2d 98, 100 (7th Cir. 1986); s*ee also Felde v. Town of Brookfield,* 570 F. Supp. 2d 1070 (E.D. Wis. 2008); *Castelaz v. City of Milwaukee,* 94 Wis. 2d 513, 521, 289 N.W.2d 259 (1980) (civil service laws do not prevent a city or state from terminating an employee "if there are no funds available or if the position is abolished in good faith or otherwise becomes unnecessary"); *State ex rel. Thein v. City of Milwaukee,* 229 Wis. 12, 281 N.W. 653, 656 (1938) (holding that civil service laws are not intended to prevent good faith reorganizations with a view to securing greater efficiency); *Dane County v. McCartney,* 166 Wis. 2d 956, 963-64, 480 N.W.2d 830 (Ct. App. 1992) (finding that elimination of a position pursuant to a reorganization does not entitle employee to due process). Where the reorganization exception applies, it circumscribes the employee's substantive property right. *Campana v. City of Greenfield,* 164 F. Supp. 1078, 1092 (E.D. Wis. 2001).

The reorganization exception applies to situations in which a restructuring or other cost-cutting measure is implemented and where employee performance is not an issue. *See, e.g., Misek,* 783 F.2d at 100-101*; Duffy v. Sarault,* 892 F.2d 139, 147 (1st Cir. 1989); *Hartman v. City of Providence,* 636 F. Supp. 1395, 1410 (D.R.I. 1986); *Franks v. Magnolia Hosp.*, 999 F. Supp 1310 (N.D. Miss. 1995). The logic is clear. If a governmental employer is looking to reorganize a department or to transfer functions for the sake of greater efficiency or cost-savings, a pre-termination hearing would be superfluous. It would be superfluous because the decision is not predicated on any misconduct or other performance-related concerns that the plaintiff could refute in a pre-deprivation hearing. *See, e.g., Digiacinto v. Harford County, Md.,* 818 F. Supp. 903, 906 (D. Md. 1993); *Christian v. Cecil County,* 817 F. Supp. 1279, 1284 (D. Md. 1993).

To require a pre-termination hearing in the context of a governmental reorganization would contravene the purpose of a pre-termination hearing, which is to serve as a "determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). The present situation does not warrant any pre-deprivation due process, as it was not related to Plaintiff's performance, but rather aimed at providing greater efficiency and to save County revenues.

The case perhaps most analogous to the present situation is the Court of Appeals' decision in *McCartney, supra.* McCartney was employed by Dane

County as the director of social services. In that case, Dane County reorganized its social services department and the community support and health services department into the human services department. As a result of the reorganization, the director of social services position was abolished and the plaintiff lost his job. He subsequently applied for and accepted a position in the human services department. The court noted that McCartney had a property interest in his employment pursuant to Wis. Stat. § 46.23(3)(d). *McCartney*, 166 Wis. 2d at 967-68. Nevertheless, because there was no dispute that the county eliminated his position and transferred the duties of that position to another department pursuant to the reorganization, the reorganization exception applied. As a result, the court held that McCartney had no due process right to a hearing and could not maintain a due process claim under 42 U.S.C. § 1983. *Id.* at 968.

The district court's decision in *Felde v. Town of Brookfield,* 570 F. Supp. 2d 1070 (E.D. Wis. 2008), where the town eliminated a part-time fire chief position and created a full-time fire chief position, is also instructive. There, the chief had a property interest in his job by virtue of Wis. Stat. § 62.13. Nevertheless, the court similarly held that a for-cause employee who lost his position pursuant to a legitimate governmental reorganization is not entitled to any due process protections. *Id.* at 1074-75 (*citing Thein,* 229 Wis. 2d at 18). Because the part-time position was abolished and a full-time position was created, the court held that no reasonable fact-finder could find that the former chief did not lose his job as part of the reorganization. The court thus concluded, "[a]s stated, under

8

Wisconsin law, an employee who loses his position as the result of a legitimate reorganization has no property interest in continuing to serve in the position he formerly held." *Id.* at 1075.

    B.    <u>The reorganization by Green County was legitimate.</u>

As noted above, this exception only applies where the governmental reorganization is "legitimate." *Nelms v. Modisett,* 153 F.3d 815, 821 (7th Cir. 1998); *Garrett v. Barnes,* 961 F.2d 629, 634 (7th Cir. 1992). A municipality cannot "cry 'reorganization' in order to circumvent . . . constitutional and statutory protections." *Misek,* 783 F.2d at 101. Generally, an employee can attack the legitimacy of a reorganization by showing that the reorganization did not actually occur or that it was done in bad faith. *Thein,* 229 Wis. at 12 ("Civil service laws are not to be evaded by a sham abolition of an old position for the purpose of ousting an incumbent.").

In the present case there is absolutely no evidence that the County is crying reorganization in an effort to circumvent constitutional protections. There is likewise no evidence that the reorganization was implemented in bad faith or that it was intended to oust Plaintiff from her position. Indeed, the exact opposite is true. The decision was driven by a desire to save the County money and was done as part of the 2009 budget process. The County did not seek to get rid of Plaintiff. While the County was required contractually to post the new union position, the County encouraged Plaintiff to apply for the new position and did not interview anyone else for the newly created position. (PFOF ¶¶ 54-

9

58). She was hired to fill that new position in Human Services and remains employed by the County in that capacity to the present day. (PFOF ¶¶ 59-60).

Plaintiff will likely argue that her position was not actually "eliminated," as the County is statutorily required to have a position providing juvenile intake services. In some circumstances, evidence as to whether a position was actually eliminated can be strong evidence of an illegitimate reorganization. For instance, where a governmental employer claims that it eliminated a position in order to justify the removal of an employee, evidence that the position was not actually eliminated, but filled by another new employee, would be strong evidence that the reorganization was not legitimate. However, where an entire governmental function is transferred from one department to another for the sake of efficiency and cost-savings, the fact that the duties continued to be performed in the new department is not evidence of illegitimacy.

Under Wisconsin law, when a reorganization is carried out by a legislative body, the courts may not inquire into the motives of the legislators. *Misek,* 783 F.2d at 100-01; *Felde*, 570 F. Supp. 2d at 1075; *State ex. rel. Miller v. Baxter,* 171 Wis. 193, 193, 176 N.W. 770 (1920). In *Miller,* the Wisconsin Supreme Court held that a court could <u>not</u> inquire into the motives of a city council in abolishing the plaintiffs' jobs despite evidence and a finding by the trial court that the council had passed the ordinance in order to avoid a "for cause" requirement. *Id.* (emphasis added); *see also Banach v. City of Milwaukee,* 31 Wis. 2d 320, 327, 143 N.W.2d 13 (1966) ("the motives of a common council or other municipal body

10

performing a legislative function may not be inquired into on judicial review") (*citing S.D. Realty Co. v. Sewerage Comm.,* 15 Wis. 2d 15, 30, 112 N.W.2d 177 (1961); *MTW, Inc. v. City of Milwaukee,* 327 F. Supp. 990, 992 (E.D. Wis. 1971) ("ordinance which is valid on its face may not be condemned by the court because a legislative committee may have expressed an unworthy purpose in furthering its adoption"). Thus, under Wisconsin law, where a reorganization is established by a legislative act, a reorganization is a sham only if it did not actually occur. *Felde,* 570 F. Supp. 2d at 1975; *Campana,* 164 F. Supp. 2d at 1094. As noted by the court in *Campana,* "because I cannot consider whether the Council acted in bad faith and because the Council eliminated the position entirely, rather than replacing Campana with a different employee, the exception applies." *Id.* at 1095; *see also Felde,* 570 F. Supp. 2d at 1074-75.

In the present case, there is no question that the reorganization carried out by the County Board of Supervisors was a legislative act. Therefore, in assessing whether it was legitimate, the motives of the County Board are immaterial, and this Court must simply determine whether the reorganization actually occurred. *Campana,* 164 F. Supp. 2d at 1094.

The undisputed evidence shows that the reorganization occurred. Positions in the circuit court were eliminated and a new position in Human Services was created. (PFOF ¶¶ 49-55). Prior to the reorganization, the County was providing juvenile intake services through a court-attached agency that was staffed with one full-time employee, a vacant part-time employee, or other

11

temporary or contracted employees who filled in on an as-needed basis. (PFOF ¶¶ 16-19). After the reorganization, all of the functions were assumed and performed by employees in the Human Services Department. (PFOF ¶¶ 49, 59). The function of the "chief" juvenile intake worker was assumed by the Dee Jaye Miles, the Supervisor of the CYF Unit of the Human Services Department. (PFOF ¶ 51). When looking objectively at the reorganization, there is not credible argument that it was a sham or did not actually occur.

Even if the motivation behind the reorganization is considered, the record establishes that it was legitimate. The transfer of juvenile intake services to human services resulted in better efficiency and significant costs savings to the County. First, the County was required to provide 24 hour/7 day-per-week coverage for juvenile intake services. (PFOF ¶ 25). Prior to the reorganization, the County paid an on-call juvenile intake worker approximately $10,000 per year. (PFOF ¶ 27). After the reorganization, as there was already an on-call employee available 24/7 in the CYF Unit of the Human Services Department, and because that individual could also cover on-call services for juvenile intake, the reorganization resulted in one less on-call person being required within the County at any given time. (PFOF ¶ 27, 53). This meant that an on-call person dedicated exclusively to juvenile intake was no longer required, thereby saving the County approximately $10,000 per year. (PFOF ¶ 64).

Furthermore, because of the lack of depth within the court-attached juvenile intake agency, Schulz accrued significant overtime in 2007 and 2008. The

amount of overtime accrued by Schulz in 2009 has been significantly reduced. Plaintiff, for instance had over $10,000 in overtime in 2007 and approximately $7,500 in overtime in 2008. (PFOF ¶¶ 23-24). Yet, in 2009, her overtime has dropped to just slightly over $1,000. (PFOF ¶ 65).

Projections made by Rhonda Hunter, the County's Director of Finance, in the fall of 2008 were that the reorganization would save the County approximately $75,000 per year. (PFOF ¶¶ 41-42). As it turned out, by the middle of 2009, when these approximate savings were actually realized, the County board allocated the juvenile intake budget and transferred approximately $65,000 of the budget to human services to cover the cost of the juvenile intake function and the remaining balance of approximately $75,000 back into the County's general fund. (PFOF ¶ 61-63). This $75,000 transfer represented an estimate of the actual cost-savings of the reorganization.

The reorganization also resulted in the elimination of the part-time position, which was previously part of the court-attached budget. (PFOF ¶ 52). After the reorganization, back-up which had previously been performed by the part-time and contracted workers could be assumed by one of the other employees in Human Services who were trained to provide juvenile intake services. This allowed the county to provide better staff coverage for juvenile intake. Under the previous arrangement, the County had to rely upon a contracted employee through a different county for back-up or a part-time employee when that position was filled. Under the new arrangement, the

13

County had a stable of trained social workers in human services who could assist in providing the required services.

In conclusion, because the reorganization actually occurred and the record demonstrates that the reorganization was legitimate and fiscally motivated, the reorganization was legitimate and no pre-deprivation due process was required.

    C.    <u>Plaintiff was not denied to any due process in that she was never "removed" from the job.</u>

In the alternative, Defendant maintains that Plaintiff was never removed from her position, as she continued to perform juvenile intake services for the County without a gap in service. Because she was not technically removed from office, no due process was required.

Green County Board eliminated Plaintiff's job as chief juvenile intake officer and transferred those duties to the Human Services Department. A new juvenile intake position was created in Human Services to perform the same functions that Plaintiff had previously performed. (PFOF ¶ 49). Plaintiff applied for and was hired to fill that position, which she started on January 1, 2009, the same day that her position in the circuit court was eliminated. (PFOF ¶¶ 57-60). In that Plaintiff was never removed from her position as a juvenile intake worker, and she continued working for the County providing juvenile intake services without a gap in service, Plaintiff was not entitled to any pre-deprivation due process.

14

State law, which is the source of her claimed due process right, provides that "[d]isposition staff and intake workers appointed to provide services under Chs. 48 and 938" may only be <u>removed</u> for cause." The state law upon which she relies applies only to "removals" from office. Plaintiff only had a due process right to continued employment in <u>a</u> job as <u>a</u> "disposition staff or intake worker appointed to provide services under Chs. 48 or 968." *Wis. Stat. § 17.10(6)(b).* Plaintiff did not have a right to the "chief" intake juvenile officer position in the circuit court. *Cf. Gustafson v. Jones*, 117 F.3d 1015, 1020 (7th Cir. 1997) (holding that a police officer does not have property interest in a job assignment because statute required cause for discharge and suspensions not transfers). The statutory basis for Plaintiff's claim does not extend to demotions or transfers as opposed to "removals" from office.

The case perhaps most analogous to the present facts is that of *Johnson v. City of Fort Wayne*, 91 F.3d 922 (7th Cir. 1996). One of the issues presented was whether a firefighter who was demoted from his rank of Assistant Fire Chief to a position as a firefighter without notice and a hearing violated his Fourteenth Amendment due process rights. While there was no dispute in that case that Johnson had a protectable interest in a position as a firefighter and that he could only be dismissed for cause, the court analyzed whether Johnson had a protectable property interest in the position as the "Assistant Fire Chief." The court found that Johnson could be moved from the rank of Assistant Fire Chief to the rank of

15

firefighter and that such a transfer did not implicate any Fourteenth Amendment protections as he did not have a protectable property interest in his rank.

Similarly, while Schulz had a protectable property interest in her position as a dispositional staff or intake worker providing services under chs. 48 and 938, she did not have a protectable property interest in her position as the "chief" juvenile intake worker. The reorganization with Green County did not result in her removal from office, but rather allowed her to continue providing such services in a different department. It was tantamount to a transfer, not a removal, and did not violate her Fourteenth Amendment due process rights.

## CONCLUSION

For the reasons articulated herein, Plaintiff's due process rights were not violated, and summary judgment should be granted in Defendant's favor.

Dated at Milwaukee, Wisconsin this 5th day of February, 2010.

>                    Respectfully submitted,
>                    **LINDNER & MARSACK, S.C.**
>
> By:    /s/ Oyvind Wistrom
>        Oyvind Wistrom
>        State Bar No.:  1024964
>        James R. Scott
>        State Bar No.:  1013342
>        Attorneys for Defendant

**MAILING ADDRESS**
411 E. Wisconsin Ave., Suite 1800
Milwaukee, WI 53202-4498
(414) 273-3910
(414) 298-9873 (FAX)
owistrom@lindner-marsack.com
jscott@lindner-marsack.com