UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
_____

SHEILA SCHULZ,

       Plaintiff,

   vs.                                                 Case No. 09-C-298

GREEN COUNTY, WISCONSIN,

       Defendant.
_____

**REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**
_____

## INTRODUCTION

The question presented in this case is whether the governmental "reorganization exception" applies and whether Plaintiff was denied any pre-deprivation due process under the Fourteenth Amendment to the U.S. Constitution in the context of Green County's reorganization of its juvenile intake function. In seeking to establish that Green County's reorganization of its juvenile intake function was not legitimate, Plaintiff makes several arguments.

First, Plaintiff contends that the reorganization did not actually occur because the County did not technically abolish her position, but rather continued to provide juvenile intake services as statutorily required under Chapters 48 and 938 of the Wisconsin Statutes through another position in human services. However, the fact that the County continued providing the same services through a different department is not evidence of illegitimacy. If the Court were to adopt Plaintiff's argument, every reorganization of the juvenile intake function would be regarded as illegitimate because, based on the statutory requirement, juvenile intake services

1

must always be provided by the County. Under such an argument, the County could never undergo a legitimate reorganization of the juvenile intake function.

Plaintiff also seeks to argue that the reorganization was not legitimate based on a number of arguments relating to bad-faith. Plaintiff maintains that the manner in which the County implemented the restructuring was somehow improper, and she challenges the extent of the County's financial savings from the restructuring. As argued in Defendant's principal brief, the motivation of the County Board members is not relevant. Instead, the focus should be on whether a reorganization actually occurred. Nevertheless, even if their motivation is relevant, Plaintiff has not submitted evidence that any of the County Board members were motivated by anything other than financial concerns. Even if Plaintiff can show that the there were alternatives to the manner in which the reorganization was implemented, or that the actual savings was something less than what the County anticipated, such is not evidence that the reorganization did not actually occur or was not legitimate.

**ARGUMENT**

I. THE GOVERNMENTAL REORGANIZATION EXCEPTION APPLIES TO THE PRESENT FACTS

Under Wisconsin law, when a reorganization is implemented by a legislative act, as was the case here, the motivations of the legislators are irrelevant. *Misek v. City of Chicago,* 783 F.2d 98, 100-01 (7th Cir. 1986); *Felde v. Town of Brookfield*, 570 F.Supp.2d 1070, 1075 (E.D. Wis. 2008). Plaintiff makes no argument that this standard does not apply to the present case or that the motives of the individual County Board Supervisors are relevant.

The law is clear, and Plaintiff does not dispute, that there is no set of specific factors that must be considered when analyzing whether a reorganization is legitimate. The circumstances

and particular facts of each situation must be analyzed to determine whether a reorganization or restructuring actually occurred. Ultimately, the court must simply determine whether the reorganization was a sham or not. *Duffy v. Sarault*, 892 F.2d 139, 147 (1st Cir. 1989).

Plaintiff contends that in analyzing governmental reorganizations, "courts generally agree that a 'critical factor' tending to show whether a reorganization in fact occurred is whether the plaintiff's position was actually abolished." (Plaintiff's Brief p. 8). This has been found to be an factor where the claimed abolishment of a position was found to be pretext for the employer to rid itself of a bad employee. *See, e.g., Ryman v. Reichert*, 604 F.Supp. 467 (D.C. Ohio 1985); *Baker v. Borough of Port Royal, PA*, 2007 WL 1576439 (M.D. Pa. 2007). The cases that Plaintiff relies upon generally involved a municipal employer eliminating one position and recreating essentially the same position within the exact same department in an apparent effort to rid itself of a troublesome employee. In such circumstances, the fact that the position was not abolished, but rather recreated, is clearly evidence of illegitimacy.

However, "so long as the sweep of the axe is truly job related and not person-directed," the governmental action may not be challenged under a no-dismissal without cause standard. *Hartman v. City of Providence,* 636 F.Supp. 1395, 1410 (D.R.I. 1986) (*citing Newark v. Civil Service Comm.,* 172 A. 589, 591 (N.J. Sup. 1934); *Weston v. Ferguson,* 457 N.E.2d 818, 819-20); *see also Howie v. Stackhouse*, 59 Ohio. App.2d 98, 392 N.E.2d 1081 (1977) (holding that a position may be eliminated, not a person). Where a governmental function is restructured and moved from one department to another department, the fact that a new position in the new department is responsible for performing many of the same functions as the previous position does not establish that the reorganization was not *bona fide* or legitimate.

The decision in *Fragaasi v. Lorain County Board of Commissioners,* 1995 WL 115498 (Ohio App. 1995) is instructive. The Commission passed a resolution to abolish the MEG Unit, an undercover, anti-drug, investigative unit, which transferred the drug enforcement function to the Loraine County Sheriff's Department. *Id.* at * 2. As a result of the abolishment of the MEG unit, the plaintiff lost his job and his duties were assumed by the Sheriff's Department. *Id.* The plaintiff argued that the reorganization was not legitimate because the function continued to be performed in the Sheriff Department. *Id.* at * 4. The court disagreed and concluded that, since the Sheriff's Department functioned as a separate and distinct appointing authority, the existence of a position performing the same duties under another appointing authority was not evidence that the position was not abolished. *Id.* at * 8. The court found that the abolishment was justified based on the same reasons that motivated the County Board , namely, reasons of reorganization, efficiency and economy. *Id.* The fact that another position in a different department assumed statutorily required duties cannot be considered as evidence of illegitimacy when the County is statutorily required to continue providing the services.

It is undisputed that the court-attached juvenile intake function in Green County was abolished effective December 31, 2008. The creation of a new position in the Human Services Department does not mean that the first position was not eliminated or abolished. The new position that was created performed duties in a different department under the supervision of a different appointing authority. The Human Services Department was better equipped to handle the workload of the juvenile intake function in that it already had a supervisor and numerous trained employees available to provide back-up juvenile intake services.

Plaintiff's attempt to distinguish *Dane County v. McCartney*, 166 Wis. 2d 956, 480 N.W.2d 830 (Ct. App. 1992) is unpersuasive. Plaintiff argues that the decision is inapposite

because the issue of whether a position was actually eliminated did not exist in *McCartney*. That is a meaningless distinction. *McCartney* involved the elimination of the director of social services position as part of the abolishment of the social services department. The functions that he had performed were assumed by the human services department when that department was created. The fact that the function previously performed by one department were transferred and assumed by another department did not mean that the position was not actually eliminated or abolished. *Id*. at 964. That holding is equally applicable to the present facts.

Plaintiff cannot establish that the restructuring was a pretext for terminating a disfavored employee. *Campana v. City of Greenfield*, 1094 F.Supp.2d 1078, 1094 (E.D. Wis. 2001). As noted by Plaintiff, there are a number of factors that courts have considered in determining whether a restructuring was an effort to rid itself of an employee. (Plaintiff's brief, pp. 11-12). This is not a situation in which the county used a pretextual job elimination as a means to terminate Schulz.

By all accounts, Schulz was a good employee and was praised by many who knew her. (PFOF ¶¶ 43, 44). Green County was not able to simply pick up the position and drop it into the Human Services Department because the new position was part of the Union. (Defendant's Response to APFOF ¶¶ 7, 17). Under the union contract, the County was required to post the newly created position for five days. (PFOF ¶ 54-55). As soon as the five day posting was over, the County's Corporation Counsel sent Plaintiff a letter and application encouraging her to apply for the new position. (PFOF ¶ 56). She was the only person interviewed and was given the position. (PFOF ¶¶ 58-60). There is <u>no</u> evidence that the County sought to terminate the Plaintiff as an employee of the County.

The reorganization also changed the manner in which the County provided the required services, in that the County eliminated a part-time position in the circuit court, as well as the need to employ various back-up workers, including one worker from Lafayette County, to fill in when Schulz was not available. (PFOF ¶¶ 51-52). Under the new structure, there are various social workers in Human Services who are able to fill in and perform the juvenile intake function when necessary. (PFOF ¶¶ 19, 37). The reorganization also reduced the number of on-call workers within the County from four to three. (PFOF ¶ 53).

## II.     GREEN COUNTY UNDERWENT A LEGITIMATE REORGANIZATION.

Green County clearly underwent a reorganization and restructured the manner in which juvenile intake is provided by Green County. Plaintiff's attempts to establish that the reorganization was somehow illegitimate is unavailing. Plaintiff argues unconvincingly that the reorganization was illegitimate because: (1) there were different means by which the County could have implemented the reorganization; (2) that the County did not engage in a long enough deliberative process before implementing the restructuring; or (3) the actual cost savings realized by the County may not have been quite as high as initially projected. None of these arguments supports a finding that the reorganization was not legitimate.

### a.     The County went through a deliberative process

Plaintiff seeks to argue that the only effort Green County undertook before deciding to implement the restructuring was an illegal twenty minute meeting of the Personnel and Labor Relations Committee. (Plaintiff's Brief, p 15). This statement is wrong on numerous levels. The process was much more elaborate than a single twenty minute meeting. The matter was first discussed at the September, 2008 Finance Committee meeting. (PFOF ¶¶ 35-36). It was then taken up by the Personnel and Labor Relations Committee at its October 29, 2008 meeting.

(PFOF ¶ 43). At that meeting, a number of individuals were permitted to speak to the committee concerning the proposed restructuring and a significant amount of documentation was presented to the committee. (Id.). This material included the Policies and Procedures of the Juvenile and Children's Court, information presented by Schulz, including her response to the various "budget issues;" financial and budgetary documents reflecting the anticipated savings from the restructuring; and letters/memos from various individuals addressing the proposed restructuring. (PFOF ¶¶ 44, 45). Based on concerns raised during this first Personnel and Labor Relations Committee meeting, the Committee called a second meeting in November where it addressed various performance-related concerns directly with the Director of the Human Services Department and the Supervisor of the CYF Unit. (PFOF ¶¶ 46, 47). The minutes reflect that the closed session lasted approximately one hour. (Defendant's Response to APFOF ¶ 90). The Committee then made a recommendation to the entire County Board of Supervisors that that the juvenile intake department be restructured. (PFOF ¶ 48). The Board then took the matter up at its December 9, 2008 board meeting and passed a resolution eliminating the court-attached juvenile intake function and creating a new position in Human Services. (PFOF ¶ 49).

    b.    <u>The County did not have an illegal meeting pursuant to the Wisconsin Open Records Law.</u>

Plaintiff contends that the November 19, 2009 personnel committee meeting was somehow illegal by arguing that it did not address the "employment, promotion, compensation or performance evaluation data of any public employee over which the governmental body had jurisdiction." (Plaintiff's Brief, pp. 24-27). Plaintiff's criticism of the Personnel Committee is misguided, in that it was the County Board that passed the resolution effectuating the reorganization. Nevertheless, the discussions that took place in the closed session of the

November, 2009 committee meeting were within the scope of that permitted under Wis. Stats. § 19.85(1)(c).

The purpose of the exemption is to protect individual employment from having their actions and abilities discussed in public and to protect governmental bodies from "potential lawsuits resulting from open discussion of sensitive information." *Oshkosh Northwestern Co. v. Oshkosh Library Bd.,* 125 Wis. 2d 480, 486, 373 N.W.2d 459 (Ct. App. 1985). The exception does not protect a governmental body when it discusses general policies that do not involve identifying specific employees. 80 Wis. Op. Atty. Gen. 176 (Feb 25, 1992). However, where job performance is at issue, the matter should be handled behind closed doors. Wis. Stat. § 19.85(1)(c) specifically authorizes closure in circumstances such as determining which employees to lay off or whether to non-renew an employee's contract at the expiration of the contract term. 66 Wis. Op. Att'y Gen. 211, 213.

In the present case, the Personnel and Labor Relations Committee was addressing concerns about the performance of the Human Services Department, and in particular, the supervisors in the Human Services Department. (See Defendant's Response to APFOF ¶ 81). The comments and letters presented to the committee on October 29, 2008 raised specific concerns about the performance of Human Services personnel including comments that the communication with the department resulted in meaningless outcomes, follow-through was minimal, there was a lack of confidence in the department, and that they were not able to devout the necessary time and resources to handle their cases. (Id.). These concerns were undeniably performance related. The committee therefore requested the attendance of the Director of the Human Services Department (Holcomb) and the Supervisor in the CYF Unit (Miles) to address those concerns. (PFOF ¶¶ 46, 47). The purpose of the meeting was to address performance

issues involving the department and its supervisors and the committee specifically allowed Miles an opportunity to respond to these concerns. (See Defendant's Response to APFOF ¶ 87).

None of the three individuals who were present at the closed session of the meeting, and who were deposed (Morgan, Miles and Mandel) testified that the performance of Miles and the Department were not discussed during the meeting. (Id.). Plaintiff cites to APFOF ¶ 84 and contends that "[o]ne committee member characterized the closed session as a means to get representatives from Human Services in to get their follow up to criticism made about the department in general." (Plaintiff's brief, p. 26). The proposed finding of fact, however, only supports the finding that the committee followed up on concerns raised at the October 29, 2008 meeting. It does not establish that the Committee was concerned only about the "department in general," as opposed to the performance of department personnel. (See Defendant's Response APFOF ¶¶ 81-87).

The October 29, 2008 committee meeting addressed performance related concerns and was permissible under the Wisconsin Open Meetings Law. No formal claim alleging a violation of the law has ever been made.

    c.    <u>There was no bad faith in connection with the restructuring</u>

The evidence presented by Plaintiff that the County's action was taken in bad faith is unpersuasive. As evidence of bad faith, Plaintiff first contends that there were unprecedented attempts to discipline Schulz. (Plaintiff's Brief, p. 16). The suggestion by the Corporation Counsel to reprimand Schulz was based on her failure to arrange for adequate back-up when she went off on a medical leave of absence – even Judge Beer agreed that the arrangements she had made were "unacceptable." (Defendant's Response to APFOF ¶ 116). As for being unprecedented, they were not. While Judge Beer had not received such a suggestion in the past,

the Corporation Counsel testified that he had made such a suggestion to other department heads in the past. (Id. at ¶ 117).

The allegation that Miles communicated with County decision-makers about Schulz's ethical conduct is not supported by the record. Miles specifically testified that there was a meeting in which the County Board invited Judge Beer and herself to discuss some concerns, but this was "not in the context of the 2008 transfer." (Id. at ¶ 118). Miles further testified that around the time of the reorganization, other than her comments at the November 19, 2008 Personnel and Labor Relations Committee meeting, she did not believe she had any conversations concerning Schulz's unethical conduct, not even informally. (Id.). There is no testimony on the record of any board members even being aware of any unethical conduct by Schulz.

The statement that the County Board needed more oversight is not evidence of bad faith. (Defendant's Response to APFOF ¶ 119). It was true that the new position in Human Services would be subject to additional oversight and supervision than her former position in the circuit court. If anything this reflects yet another legitimate justification for the restructuring, not that it was implemented in bad faith.

The seniority issue is a red herring. Schulz claims that another employee who transferred into Human Services from the circuit court was given seniority retroactive to her start date with the County. This is simply not true. While an earlier union seniority roster reflected an incorrect seniority date for Tia Long, the seniority roster was changed to reflect the correct seniority date, which shows that she was treated the same as all other employees. (Id. at ¶ 112).

Schulz also claims that the County did not consider Schulz's suggestion for budget savings and the consolidation of on call functions. Exactly what these suggestions were is

10

unclear. She did suggest that the County eliminate the part-time position, but such a move would only have heightened the staffing related concerns in her department. (PFOF ¶ 31).

As for Miles' statement that there was no need in early October, 2008 to consider consolidation because the restructuring was a done deal, there is nothing in APFOF ¶¶ 107-119 to support this assertion. (Plaintiff's brief, p. 16-17). It is also immaterial because Miles was not a decision-maker.

Plaintiff also claims that Green County explored no other options. (Plaintiff's Brief, p. 17). This is not supported by the testimony of anyone who was actually involved in the decision-making process. The proposed finding related only to the fact that the Finance Committee did not explore any other options. The Personnel and Labor Relations considered various options – including the possibility of picking up the position and transferring it. That option was not viable, however, due to the fact that Plaintiff would be entering a new bargaining unit and the collective bargaining unit required posting for all vacancies. (Defendant's Response to APFOF ¶¶ 7, 17).

As for supervision, the record demonstrates that Miles was designated the chief intake worker. (PFOF ¶ 51). The Personnel and Labor Relations Committee certainly considered the impact of the transfer to that department and the individual who would be supervising the department – that was the precise purpose of convening in closed session to address concerns the committee had about transferring juvenile intake under the supervision of Human Services. (PFOF ¶¶ 43-47). Miles was qualified for the position, which required that the candidate complete the required juvenile intake training. (See Defendant's Reply PFOF ¶ 37).

d.  The financial savings were real

Defendant maintains that the anticipated savings from the restructuring was approximately $74,000 annually. (PFOF ¶¶ 61-65). Plaintiff challenges the anticipated savings and claims that the alleged costs savings with respect to salary, overtime, mileage and insurance was questionable. The material cited to support her claim that these savings were questionable amount to nothing more than her personal perception and speculation about the County's financial numbers.

First, Defendant correctly noted that one person could not handle the juvenile intake function by themselves. This is not because the hours required of the position exceeded that which one person could perform. It was based on the fact that someone always had to be available to perform juvenile intake services 24 hours/7 day a week. (PFOF ¶ 39). Without any back-up, it was impossible to staff the position when she was on vacation, sick, or otherwise unable to perform her required duties. That was clear when she went off on a leave of absence in November, 2008 and unacceptable coverage problems resulted. (Defendant's Response to APFOF ¶ 116).

With respect to the overtime issue, Plaintiff maintains that, as a result of the transfer, the County was required to pay Miles overtime for supervising the juvenile intake function. (Brief, p. 20). Plaintiff does not, however, articulate the actual costs associated with the juvenile intake function or the amount of overtime related to juvenile intake. A review of payroll records reflects that Miles had only 6.1 hours of overtime related to juvenile intake in 2009. (Defendant's Reply PFOF ¶¶ 35, 37). Schulz's overtime also went down – she had $7,540.35 in overtime in 2008 and only $1,099.71 in 2009. (PFOF ¶¶ 24, 65). There is NO evidence that overtime costs for juvenile intake went up in 2009. In fact, the exact opposite is true.

Third, with respect to mileage, Miles anticipated that mileage would be reduced if the function was transferred to Human Services. (Plaintiff's Brief, p. 21). By transferring the juvenile intake function to Human Services, some mileage would be reduced in Child Protective Services (CPS) cases. In handling CPS cases in the past, both personnel from the CYF unit of Human Services and the court-attached juvenile intake department were involved in the process and incurred mileage. In combining the CYF unit with juvenile intake, one person could perform both functions thereby reducing overall mileage. (See Defendant's Response to APFOF ¶ 67).

Plaintiff also points out that that several line items were over budget in the Human Services budget in 2009. (See Plaintiff's brief, pp. 22-23; See also, Defendant's Response to APFOF ¶¶ 20-80). Plaintiff blindly argues that these overages must be related to the juvenile intake functions and therefore the anticipated savings were somehow erroneous. This argument is flawed for several reasons.

First, the projections made by the County at the end of 2008 were merely projections and cannot be expected to be precise on each line item. The fact that some of the projections were slightly off, based on actual six-month figures, is not evidence that the anticipated savings were pretextual – it merely reflects that they were simply projections. Final year end numbers have not been presented by Plaintiff.

Second, Plaintiff has presented <u>NO</u> evidence that the projected overages (overtime, office supplies and mileage) were related to the juvenile intake function. Indeed, as discussed above, the overtime for Schulz went down significantly and Miles only incurred 6.1 hours of overtime related to juvenile intake in 2009. (Defendant's response to APFOF ¶¶ 35, 37). Schulz's

mileage was also reduced significantly from 2008 to 2009. (Id. at ¶¶ 70-74). Plaintiff's claim that these overages are attributable to juvenile intake is pure speculation.

Third, even if the overages were related to juvenile intake, the overages with respect to these line items amounts to less than $20,000, meaning that even if all of the overages related to the juvenile intake function, there would still be a significant cost savings to the County from the restructuring. (PFOF ¶¶ 61-67).

Fourth, selecting only certain line items to argue that the CYF budget was over because of the juvenile intake services is unfair. Indeed, based on six month projections, the CYF unit was approximately $80,000 under budget. (Defendant's Response to APFOF ¶ 56).

The savings were real and not imagined. Plaintiff admits that the County saved approximately $10,000 per year as a result of the restructuring, which combined the juvenile intake on-call person with the CYF unit on call person. (Brief, p. 23). There were also significant savings with respect to salary and overtime. (PFOF ¶¶ 23-24, 65). The position incurred approximately $1,000 in overtime in 2009, as compared to prior years where it ranged from $7,500 and $10,000. (Id.). Savings also resulted from the elimination of a part-time position that had been budgeted into the court-attached agency, which was no longer necessary based on the available back-up personnel in Human Services. (Id. at 30-31, 40).

The arguments presented by Plaintiff with respect to the budgetary savings are speculative, and certainly do not establish that the savings were not real or that the costs savings were a pretextual for restructuring of the juvenile intake function.

III.    <u>PLAINTIFF WAS NOT DENIED ANY DUE PROCESS AS SHE WAS NEVER "REMOVED" FROM OFFICE.</u>

Plaintiff's response to Defendant's argument that Plaintiff was not deprived of due process because she never "removed" from office is unsupported by any precedent or established case law.

Defendant maintains that while Schulz's position was eliminated, she was never removed from a position performing juvenile intake services under Chapters 48 and 938. Any constitutional violation caused by any lack of required due process was cured when the County offered her a position in Human Services, performing services under the same provisions that initially conferred a property interest in her employment. She remains employed by the County to the present day and continues to provide juvenile intake services. Under these circumstances, it simply cannot be said that she was "removed" from office as to suffer a due process violation. *See Coffman v. Indianapolis Fire Dept.,* 578 F.3d 559, 567 (7th Cir. 2009).

The "facts" supporting Plaintiff's position that she was "removed" from officer are significantly distorted. For instance, Plaintiff claims that after Harvey Mandel was questioned about the letter he received from Judge Beer, asking whether Schulz would be hired into the "new" position, he "could offer no explanation as to why he outright ignored a simple question posed by the County's circuit court judge." (Plaintiff's Brief, p. 28). This presentation of the "facts" is misleading and is not supported by the citation to the record. The proposed finding of fact only supports a finding that Mandel did not respond to Judge Beer's letter -- Mandel was never asked why he did not respond. (See Defendant's Response to APFOF ¶ 94).

Moreover, the record does not establish that Miles "encouraged" another employee in Human Services to apply for the "new" position in Human Services. Miles testified that she talked to Tia Long about the position; not about her applying for the position, but whether or not

she wanted to perform that duty versus the duties she was already performing.  Miles never "encouraged" Long to apply for the position and the material cited by Plaintiff only establishes that the two individuals talked about the position.  (Defendant's Reply to PFOF ¶ 55).

Plaintiff further contends that the then-Corporation Counsel Morgan testified that the juvenile intake position did not have to be part of the bargaining unit and that the County sought assurances it was allowed to put the position in the Union.  (Brief, pp. 28-29).  Plaintiff completely distorts Morgan's testimony.  Morgan never testified that the County could simply have picked up her position and transferred it into the Union.  (See Defendant's Reply to PFOF ¶ 54).  To the contrary, he testified that the bargaining contract specifically prohibited the County from picking up the position with the person in it and placing it within the bargaining unit.  (Morgan Dep. 43).  His testimony could not have been more clear – "[t]hat would have been a grievable issue, one which [the union] would have won."  (Id.).

With respect to seniority, Plaintiff contends that she lost her seniority with regard to layoffs when she accepted a position in Human Services that was part of the AFSCME Local 1162-A bargaining unit, while another employee did not.  (Plaintiff's Brief, p. 29).  This again distorts the record.  Tia Long accepted a position in the AFSCME Local 1162-A bargaining unit in August, 2008, when she transferred from the circuit court to Human Services.  (APFOF ¶¶ 110-111).  A union seniority roster initially incorrectly listed her seniority corresponding to her original start date with the County.  (See Defendant's Response to APFOF ¶¶ 112, 114).  That mistake was corrected and the more recent Union seniority roster reflects her correct seniority date in August, 2008. (Id.)  Plaintiff's attempt to distort this into something sinister, without any evidence that this was anything other than an administrative mistake, borders on the unethical.

In the end, Plaintiff was treated just like every other employee who joined the AFSCME Local 1162-A bargaining unit.

## CONCLUSION

There are no material facts that would preclude the entry of judgment in Defendant's favor on its motion for summary judgment. Defendant therefore requests that summary judgment be granted dismissing this matter in its entirety.

Dated this 12th day of March, 2010.

                                              LINDNER & MARSACK, S.C.,
                                              Counsel for Green County

                                  By:   s/Oyvind Wistrom
                                        Oyvind Wistrom
                                        State Bar No.:  1024964
                                        411 East Wisconsin Ave., #1800
                                        Milwaukee, WI 53202-4498
                                        Phone:  414-273-3910
                                        Fax:  414-298-9873
                                        owistrom@lindner-marsack.com