IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHEILA SCHULZ,

                    Plaintiff,                                    OPINION and ORDER

                                                                  09-cv-298-wmc[1]

          v.

GREEN COUNTY, WISCONSIN,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

          In this civil action brought under 42 U.S.C. § 1983, plaintiff Sheila Schulz contends that defendant Green County deprived her of a property interest in her job without due process when they moved her court-attached juvenile intake services position into the County's human services agency. The defendant has moved for summary judgment, arguing (1) that Schulz was never removed from her position, but rather moved over to a new position without a break in employment; and (2) even if she had been removed, it was the result of a legitimate governmental reorganization. The undisputed facts show that the County's legislative body eliminated Schulz's court-attached position and created a new position within another agency's bargaining unit, giving union members a first opportunity at the position. Assuming for purposes of the present motion that Schulz was removed from

---

[1]   This case was reassigned pursuant a March 31, 2010 administrative order.

1

her position, a reasonable jury would be compelled to find the cause was a legitimate governmental reorganization.  The court will, therefore, grant defendant's motion for summary judgment on the grounds that her removal did not impinge on any constitutional right to due process.

## UNDISPUTED FACTS[2]

Under chapters 48 and 938 of the Wisconsin Statutes, every county must employ at least one juvenile intake worker to provide statutorily defined services related to juveniles. In 1997, plaintiff Sheila Schulz was hired as defendant Green County, Wisconsin's juvenile intake worker.  Green County also employed several other part-time workers from time to time to assist in the performance of juvenile intake duties.  Schulz supervised these workers, making her the "chief intake worker" within the meaning of Wis. Stat. §§ 48.06(3) and 938.06(3).  In 2001, Schulz was formally promoted to the position of "Director of Juvenile Intake," taken out of the union and provided with a wage hike.  As of December, 2008, Schulz was paid $26.99 an hour for regular work hours and $40.485 an hour for overtime work.

Wisconsin law allows smaller counties such as Green County to choose whether to provide juvenile intake services through the circuit court or the county department, or both. Wis. Stat. §§ 48.06(2) and 938.06(2).  From the time Schulz became a juvenile intake

---

[2]  The following facts are derived from the parties' proposed findings of fact and the record viewed in a light most favorable to plaintiff.

2

worker until January 1, 2009, the juvenile intake position was "court-attached," meaning it was under the supervision and control of the Green County Circuit Court.  On December 9, 2008, the Green County Board of Supervisors passed a resolution eliminating the juvenile intake function within the circuit court effective January 1, 2009, and creating a "Social Worker I/II" position within the Human Services Department with a job description very similar to the court-attached juvenile intake position.  At the same time, Dee Jaye Miles, the existing Supervisor in the Children, Youth and Families Unit of the Human Services Department, was designated the "chief juvenile intake worker" within the meaning of Wis. Stat. §§ 48.06(3) and 938.06(3).

While there was no requirement that juvenile intake workers be made part of a collective bargaining unit, the County made the new Social Worker I/II position part of AFSCME Local 1162-A.  Under the bargaining agreement between Green County and Local 1162-A, "[a]ll unit vacancies shall be posted within five (5) working days after the Employer determines that a vacancy exists which it intends to fill" and "shall be posted for five (5) working days" in which union employees are permitted to bid on such vacancies.  Dkt. #40-2, § 7.01.  The agreement also provided that "the management of the County and the direction of employees" remained vested in Green County, including the right to transfer employees.  Dkt. #40-2, § 3.01.

Green County, therefore, posted the new juvenile intake position within the Human Services department for 5 days starting on December 10, 2008.  No Union employees applied for the new position and, after the five-day period had ended, Green County's

3

Corporation Counsel sent Schulz an application for the new position, encouraging her to apply. After a two-hour interview, Schulz was offered the new position.

When Schulz's court-attached juvenile intake position ended on January 1, 2009, she immediately started her new position, with a lower hourly rate of $19.28 and a loss of seniority.[3]


OPINION

As a general rule, a government employee who can be discharged only for "cause" enjoys a constitutionally protected property interest in her employment and may not be removed from the position without due process. *Gilbert v. Homar*, 520 U.S. 924, 928 (1997) (citations omitted). Defendant Green County does not deny that, as a juvenile intake worker, Schulz could only be removed for "cause." Nor does it contend that Schulz was extended any kind of due process at the time her court-attached position was eliminated. Instead, it argues that (1) in immediately placing Schulz in a newly-created position, she was never "removed" from her position, and (2) any arguable removal was pursuant to a legitimate governmental reorganization, eliminating the need for further due process.

---

[3] The parties submit numerous facts related to whether (1) transferring juvenile intake services to the Human Services Department was a good idea and/or motivated by an unjustified dissatisfaction with Schulz. There is a related dispute over the claimed justification and legality under state law for Green County to conduct a closed meeting to deliberate on the transfer before the Board of Supervisors passed the resolution moving the juvenile intake worker position. For the reasons which follow, the Board's motive for passing the resolution cannot be considered and, therefore, these facts are immaterial. For this reason, it is unnecessary to attempt to untangle the parties' related factual disputes.

4

A. <u>Removal From Position</u>

In denying the County's motion to dismiss, this court concluded the allegations in the complaint allowed an inference to be drawn that someone else in the department was given the position of "chief" juvenile intake worker, suggesting that the reorganization may have been a "sham" set up to remove Schulz from that position.  Dkt. #18 at 5-6.  On summary judgment, however, plaintiff does not rely on a theory that her loss of status as "chief" of juvenile intake triggered due process rights, and in fact waives that theory[4].  Instead, plaintiff argues that she was "removed" from her position, rather than demoted.

While Schulz did not experience a break in employment by the County as she moved from the court-attached position to a position in the Human Services department, plaintiff points out that a new juvenile intake position was created and union members were allowed a right of first refusal before Schulz was even permitted to apply for and ultimately receive the job.  Plaintiff reasonably argues that this could not have happened if Schulz still "had" the job.  Moreover, Schulz lost not only her original hourly rate, but also her seniority when she entered the new position.

All of these facts would lead to the conclusion that Schulz had been removed from her earlier position, though perhaps not whether that removal amounted to a legal "discharge" requiring individual due process given that Schulz's employment by the County

---

[4]  In support of its summary judgment motion, defendant contends that Schulz did not have a due process right to retain her status as *chief* juvenile intake worker, only a right to receive process before removal from her juvenile intake position.  Plaintiff does not dispute that argument.  *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (failure to oppose argument operates as waiver).

5

continued uninterrupted.  The end result of defendant's reorganization was that plaintiff continued working for defendant, although at lower pay and with less seniority.  As a general rule, employment decisions that do not "terminate or abridge" an employment, but only reduce work responsibilities or amenities, do not give rise to a federal right to due process rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1205 (3d Cir. 1988); *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir.1983).  As the Court of Appeals for the Seventh Circuit pointed out in *Brown*, 722 F.2d at 364-65, "[o]nly interests substantial enough to warrant the protection of federal law and federal courts are Fourteenth Amendment property interests."  It is hard to see how an action with an end result equivalent to demotion could create a federally protected property interest, even if an employee's position was technically "eliminated" in the process.

However, it is not necessary to look beyond the technical nature of the "deprivation" in this case because the undisputed facts compel a legal finding that Schulz's removal was the result of a legitimate reorganization in the government.  *Dane County v. McCartney*, 166 Wis. 2d 956, 968-69, 480 N.W.2d 830, 835-36 (Ct. App. 1992).


B.  <u>Government Reorganization</u>

As the Wisconsin Supreme Court recognized many years ago, the property interest afforded by removal-for-cause employment statutes, such as the one protecting juvenile intake workers, does not protect an employee from losing her job as a result of "good-faith reorganization."  *State ex rel. Thein v. City of Milwaukee*, 229 Wis. 12, 18, 281 N.W. 653, 656

(1938). Not surprisingly, plaintiff would focus on the requirement that a reorganization be "legitimate" or in "good faith," arguing that the reorganization defense does not apply if the government has an improper motive for a reorganization, such as "ousting an incumbent." *Id.* The "good faith" requirement, however, must be considered in light of another rule that prevents a court from considering the motives of a municipality's legislative body. *State ex rel. Miller v. Baxter*, 171 Wis. 193, 196-98, 176 N.W. 770 (1920); *Banach v. City of Milwaukee*, 31 Wis. 2d 320, 327, 143 N.W.2d 13 (1966).

In *Miller*, 171 Wis. at 197, 176 N.W. 770, the Wisconsin Supreme Court reversed the trial court's ruling in favor of a city relator that had been dismissed "not . . . in the interest of economy or for the purpose of having the police force reorganized" but "for the purpose of evading [for-cause] provisions." The Wisconsin Supreme Court concluded that it was enough that the relator's office "no longer existed," explaining that the common council's motive in enacting the ordinance that led to the elimination of that office "is not a proper subject of judicial inquiry." *Id.* at 196, 198, 176 N.W. 770 (citation omitted).

Giving appropriate deference to the Wisconsin Supreme Court's articulated standard, as well as recognizing the court's decided limitations in ascribing motives to the legislative process, this court is led to the same conclusion, at least on the record here[5]. *Cf. Felde v.*

---

[5] The result might be different if there were evidence that the County Board acted on the basis of Schulz's race, age, or other suspect classification. But there is no such evidence here. Indeed, even the motives plaintiff would ascribe to the Board can only be guessed at since no challenge was brought against the Board's decision to discuss the issue of reorganization in closed session, a remedy plaintiff admits was available to, but not pursued by, her in the state courts under the Wisconsin Open Meetings Law, Wis. Stat. § 19.81 et seq.

*Town of Brookfield*, 570 F. Supp. 2d 1070, 1075 (E.D. Wis. 2008) (concluding from *Miller* that a municipality's reorganization "is a sham only if it does not actually occur"). First, the County Board of Supervisors articulated a plausible explanation for moving the intake position (cost savings), whether plaintiff agrees or not. Second, the County implemented the move. Third, though unnecessary, the County ultimately moved Schulz to the new position. Under these circumstances, no reasonable jury could conclude that the County's movement of the juvenile intake position was all a sham to rid itself of Schulz.

Plaintiff argues that the court should determine whether Schulz's "position was actually abolished," and if not, conclude that no reorganization occurred. Plt.'s Br., dkt. #36, at 8. However, framing the question that way is not helpful to Schulz. By "actually abolished," plaintiff must mean something more than the elimination of a given position; there is no question that Schulz's original position, as it then existed (outside the department), was eliminated. Indeed, plaintiff is here because she was moved into a *new* position, with different pay, seniority and supervision. Although informally the relocation of Schulz's can be called a "transfer," what defendant did was eliminate the court-attached position and create a new position.

What plaintiff seems to be arguing is that the court should ask whether the reorganization was nothing more than "giving a new title to a position involving the same duties." *Unger v. Gregory*, 249 Wis. 161, 163, 23 N.W.2d 480 (1946). But that is not helpful either, because the basis for scrutinizing such a "change in name only with no change in duties" would again require a determination as to whether a new position has been created

8

in "bad faith" or with improper motive by one County's legislative body. *Id.* (citing *Thein*, 229 Wis. 12, 281 N.W. 653). As explained above, bad faith cannot be a consideration in a due process claim because the reorganization came from the County's legislative body, at least on this record.

Plaintiff's final argument is that the Board's reorganization did not cause the removal (and therefore due process was required) because Schulz did not have to be removed from her position to effectuate the reorganization. There are actually two arguments here: (1) the juvenile intake position did not have to be part of the bargaining unit; and (2) even if it did, the position did not have to be "vacated" (Schulz could have been left in the position, avoiding the union's right of first refusal for a "vacancy)". Plaintiff is wrong on both counts. As to the first point, the new position the Board created *was* part of the bargaining unit; it does not matter that the Board had the option of relocating the juvenile intake position in a way that could keep it outside the bargaining unit.

As to the second point, the Board of Supervisors is to blame for the creation of the vacancy (and the subsequent requirement that union employees get a right of first refusal). Plaintiff contends that defendant could have simply transferred Schulz along with the position to avoid creating a "vacancy," but this ignores what the Board did when it relocated the juvenile intake position. The Board *eliminated* Schulz's original court-attached position and created a *new* position. It was the Board's decision to create a new position within the bargaining unit that led to the creation of a vacancy and Schulz's removal. In other words, the Board's reorganization did cause the removal.

9

Because Schulz's property interest in her position as juvenile intake worker does not protect her from removal pursuant to an actual reorganization ordered by the County's legislative body, her due process claim must fail.

## ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Green County, Wisconsin, dkt. #21, is GRANTED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 14th day of May, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

10